6959

## CANNON v. DEAN.

1. CONTINUANCE.—It was not an abuse of discretion to order this case to trial under the facts in absence of defendant, alleged to be sick, and one of his witnesses.

2. NEW TRIAL.—Under the facts here it was not error to refuse new trial because plaintiff's attorney had said during trial that defendant was intentionally drunk for the purpose of delaying the trial.

3. PERSONAL PROPERTY—ESTOPPEL.—Instructions as a whole in this case to the effect that purchase of personal property from one who had it in possession without authority to sell confers no title, that purchase from one having it in possession with authority to sell confers title, and purchase from one having it in possession in presence of owner without objection estops owner from afterwards claiming property, sustained.

Before WATTS, J., Spartanburg, October, 1907. Affirmed.

Action by Sue C. Cannon against E. B. Dean. From judgment for plaintiff, defendant appeals. The following is the charge of the Judge, leaving off the formal portions:

"Now, I charge you that if you are satisfied that the plaintiff here, Mrs. Cannon, is the owner of these horses, and Mr. Dean wrongfully is in possession of the same, and refuses to turn them over to her upon demand—and he admits that demand has been made in his answer, and he refused it—then your verdict will be for her, for the return of the property, and, in the event the property cannot be had, then for the value thereof, to be fixed by you; and also any damage you think she has sustained, if any, by reason of the detention of her property by Mr. Dean. If, on the contrary, you are satisfied that she is not the owner of these horses, and Mr. Dean is the owner, then your verdict will be for him. The facts and circumstances are for the jury, entirely. You have heard the testimony on the stand, and that is for you entirely. You find your verdict in accordance with the testimony you hear, and in accordance with the law I give you.

If you are satisfied by the preponderance of the testimony, or by the weight of the testimony, that Mrs. Cannon, the plaintiff, is the owner of the horses, that Mr. Dean is in possession of them unlawfully—it is her property and he refuses to turn it over to her—then she would be entitled to a verdict for the return of the property, and, in the event the property cannot be had, for the value thereof; also for such damages as you think she has sustained by reason of detention by Mr. Dean of the property.

"If, on the contrary, you believe she is not the owner of the horses, and Mr. Dean is, then your verdict will be for him.

"Mr. Sims: I would like for your Honor to charge the doctrine of estoppel.

"Judge Watts: I charge you this: If I send a man to Spartanburg, or send one to your home, in possession of my horse, and he goes and sells it, and is not acting within the scope of his authority, having no authority from me to sell that horse, and the party got possession of it in that way, then that would not be a good title, because the party in possession of the horse had exceeded his authority.

"If, on the contrary, you put a man in possession of your horse, and he is your agent for the purpose of disposing of it, or attending to your affairs, selling your property, or collecting money for you, or anything of that sort, as a general agent, to do what you could do yourself, then you are bound by whatever he does.

"If Mrs. Cannon turned over these horses to her husband to be shipped to Spartanburg, and they were still her property, she did not authorize him to sell them to anybody. If she allowed them to be shipped in Mr. Cannon's name, stood by and allowed Mr. Dean to purchase the horses, making no claim, then she would be estopped from asserting title.

"If a man goes and sells your team of mules and your wagon, and is not authorized to do it, you can go and recover from whoever bought it."

*Mr. C. P. Sims,* for appellant, cites: *New trial should have been granted on remarks of plaintiff's attorney:* 77 S. C., 404; 100 Am. St. R., 111; 54 L. R. A., 959. *It was an abuse of discretion to force defendant to trial:* 3 McC., 259.

*Messrs. Nichols & Nichols* and *Stanyarne Wilson,* contra, cite: *Continuances are within discretion of Judge:* 56 S. C., 378; 77 S. C., 240; 79 S. C., 138; 58 S. C., 335. *As to estoppel:* 13 S. C., 370.

July 14, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff, in her complaint, alleges: that she is the owner and entitled to immediate possession of the following personal property, to wit: two cream-colored mares, weight about one thousand pounds each; two dun-colored blankets and two web halters; that said property is unlawfully withheld by defandant, and that defendant has refused to deliver the same; that said property is worth $600, and that she has been damaged by his wrongful and unlawful detention of said property.

Wherefore, she demands judgment against the defendant for the delivery of said property, or in case delivery cannot be had, for $600, the value thereof, together with $600 damages.

The defendant in his answer admits that the plaintiff has demanded possession of said property, and he has refused to yield possession to her, but denies that said property is of the value of $600, and that it is not worth over $350, and specifically denies all the allegations in paragraph four of the complaint.

The defendant further claims that the plaintiff is the wife of P. L. Cannon, and that she now lives and was at the time hereinafter mentioned living with P. L. Cannon, her husband; that said P. L. Cannon shipped the horses through to Spartanburg in his name and claimed the same as his property, and in the presence of plaintiff offered to, and actually

did, trade said horses to defendant; that is to say, that said
P. L. Cannon bought a one-half interest in the livery busi-
ness of the defendant in the city of Spartanburg on the fol-
lowing terms: the said P. L. Cannon agreed to pay defendant
the sum of $3,950, as follows: the sum of $325 as the value
of the property herein sued for, with the knowledge of the
plaintiff, and plaintiff did not make any objection to the same
or claim any interest in said property, and the defendant gave
P. L. Cannon credit for the price of said property on the sum
of $3,950, a part of the sum to be paid by the delivery
of one pair of black horses as soon as they could be shipped
from the lower part of the State to Spartanburg, and for
which Cannon was to receive credit for $375, and the bal-
ance of the said $3,950 was to be paid in cash on the follow-
ing day after the trade.

That all of the transactions herein mentioned were made
with the knowledge of the plaintiff, who agreed to pay the
sum of $3,250 as the balance of the said $3,950; he denies
that he owes the plaintiff anything, but claims that the plain-
tiff is estopped from claiming the property herein sued for.

Therefore, he demands that the complaint be dismissed,
and that the defendant have judgment for the horses sued
for. This answer was interposed on the 22d day of March,
1906.

The action came on for trial before Judge Watts and a
jury, on the 11th day of October, 1907, but the defendant
demanded that the trial be continued, though the time had
been fixed and a week's notice given; the defendant, Dean,
being absent, his attorney asked that the case be continued
until the afternoon of October 11, 1906, on account of the
supposed absence of one of his witnesses, Mr. White. This
motion was opposed by plaintiff's attorneys, and the Court
overruled the motion, stating that unless the defendant's
attorney could bring himself within the rules the case would
have to go on. The defendant was then called at the door,
having up to that time failed to appear; his attorney asked
the Court's indulgence until the defendant could be com-

municated with, supposing that he was at his place of business, some 300 yards from the courthouse. This indulgence was granted by the Court, and some one dispatched for the defendant, whereupon his counsel announced that the defendant, who lived in the city, was taken suddenly sick, having been attacked some time during the previous night; he asked the Court's indulgence until Mr. Dean's illness could be ascertained from his physician, Dr. Allen. The Court stated that he could have a reasonable time in which to get a proper showing of his condition from Dr. Allen. This was not obtained for some time. Dr. George Dean was then sent to see the defendant, but his return was not brought to the Court for so long that the Judge ordered the trial to proceed. A short certificate, after the trial had begun and progressed some distance, was tendered to the Court by Drs. Dean and Allen, stating that defendant was sick and not well enough to be out of the house, but that he would soon be able to be out and attend to his affairs.

The trial proceeded, and after hearing testimony and the charge of his Honor, the jury rendered the following verdict in favor of the plaintiff:

"For the possession of the two horses in dispute, or the value thereof, $500, in case delivery cannot be had, and damages in the sum of $400."

The defendant then moved for a new trial, which motion was overruled by the following order by Judge Watts:

"Motion for a new trial was made in this case on the minutes of the Court and affidavits filed. A short history of the case is necessary for a proper understanding of the motion. This case was reached for trial in its regular order. It has been nine terms on the docket. The plaintiff was in court with her witnesses ready. The defendant's attorney stated that he was not ready for trial, by reason of the fact that one of his witnesses, Mr. White, had gone to Woodruff to the fair. Plaintiff's counsel stated that his client was present from Orangeburg with her witnesses, and that the case had been continued by the defendant at the March term

of Court upon the ground of the absence of material wit-
nesses, and insisted that the defendant's counsel bring him-
self within the rule. Defendant's counsel stated that he
could not do so, and I ordered the case to proceed to trial.
Defendant's counsel then stated that he had just been in-
formed that his client was sick, and that he had sent a doctor
to see about it. Plaintiff's counsel insinuated strongly that
if defendant was sick he had brought it about by his excesses
and imprudence. I waited an hour for the certificate of the
doctor. At the end of that time I ordered the case on,
stating that when the doctor's certificate came in, if in my
opinion it was a good ground to continue the case, I would
withdraw the case from the jury.

"After the close of argument on both sides, and when I
was charging the jury, the first certificate was handed in.

"The jury retired, and I instructed them to bring in a
sealed verdict. I am informed that some time after they had
retired the second certificate was brought in.

"During the trial Captain Dean, one of the witnesses, was
in court, for I saw him. In my opinion, the showing was
not sufficient to have continued the case in the first instance,
as it seemed to me as if the defendant was trifling with the
Court. I think the verdict was a proper one.

"It is, therefore, ordered and adjudged that motion for a
new trial be, and the same is hereby, refused."

The defendant then appealed upon seven grounds, which
will be considered numerically:

"First. That his Honor erred, as it is respectfully sub-
mitted, in forcing the defendant to trial when the defendant
was absent from the court-room and confined to his
bed with critical and severe illness, and wholly unable
to appear in court; that the defendant had the right to
be present in person, and the forcing of the case to trial in
his unavoidable absence was an abuse of discretion on the
part of the Court."

Great tenderness is shown to persons who are alleged to
be sick and deprived of the power of being in court, but the

orderly administration of justice requires that when a time
is fixed by agreement of both parties for the beginning of a
case, there should be presented to the Court before trial is
begun good reasons why the trial should not be held accord-
ing to previous arrangement.   In the case at bar the plaintiff
was a lady, residing in the County of Orangeburg, who had
around her the witnesses she had provided to establish her
case in court.   The defendant, on the contrary, first inter-
posed a motion, based upon the absence of a witness, for the
continuance of the case, and when called upon to comply with
the rules of Court, frankly admitted that he could not do so;
then for the first time the absence of the defendant was dis-
covered; after allowing all that was within reason, the
trial was required to proceed.   No doubt the law does allow
a defendant to be present in person, but he must be made to
comply with the reasonable demands of the law as to his
presence; if he fails, he necessarily brings upon him the
consequences of his failure to be present.   The Circuit Judge
was satisfied that the showing made by defendant was pre-
tensive, and where that is true, it is the duty of the Circuit
Judge to teach litigants that they cannot evade with impunity
their duty.   We are satisfied that nothing but stern necessity
required Judge Watts to hold the defendant to the trial thus
had.   This exception is overruled.

"Second. Because the Court erred, as it is respectfully
submitted, in refusing defendant's motion for a continuance
until the defendant could appear in court, upon the affidavits
of Drs. Allen and Dean, it being submitted that it was an
abuse of discretion in his Honor to have refused this motion
and to have forced the defendant to trial in the face of the
undisputed testimony of two reputable physicians that the
defendant was then in bed, ill and unable to be in court."

In refusing defendant's motion for a continuance, under
the circumstances hereinbefore developed, there was no abuse
in the discretion of the Circuit Judge.   This exception must
be overruled.

"Third. That his Honor erred, as it is respectfully submitted, in refusing a motion for a new trial on the ground that the remarks of Mr. Wilson, 'That the defendant, E. B. Dean, was only drunk, and was drunk intentionally, for the purpose of delaying this trial;' it being submitted that said remarks were improper, without any testimony to support them, and were highly prejudicial to the defendant's cause, and a new trial on that ground should have been granted."

In hearing the motion for a continuance, it was made to appear that the defendant the night before was seeking strong drink. Mr. Wilson, one of the plaintiff's attorneys, did say that defendant was only drunk, and drunk intentionally for the purpose of delaying this trial. This is strong language, but sometimes, unfortunately, strong language is the appropriate remedy for such failure in a defendant to do his duty. Where a man sets in motion the agencies by which his failure to do his duty may be screened to the great disadvantage of law and order, it must be severely checked. This ground of appeal is overruled.

"Fourth. Because his Honor erred, as it is respectfully submitted, in charging as follows: 'I charge you this: If I send a man to Spartanburg, or send one to your home, in possession of my horse, and he goes and sells it, and not acting within the scope of his authority, having no authority from me to sell the horse, and the party got possession of it in that way, then that would not be a good title, because the party in possession of the horse had exceeded his authority.' This charge was made upon the defendant's request to charge the law in regard to estoppel, it being submitted that the said charge was error, in the following particular: in that it failed to charge the jury that if a man sold another's property, acting in the apparent scope of his authority, that the party purchasing under such circumstances would have a good title."

The charge, as quoted, as made by his Honor, was only a part of what he did say, and this Court will not disregard its

duty to scrutinize the entire charge rather than a short extract from it, when the Judge was laying down the law for the guidance of the jury, as was done in this case. This exception is overruled.

"Fifth. Because his Honor erred, as it is respectfully submitted, in charging as follows: 'If Mrs. Cannon turned over those horses to her husband to be shipped to Spartanburg, and they were still her property, she did not authorize him to sell them to anybody. If she allowed them to be shipped in Mr. Cannon's name, stood by and allowed Mr. Dean to purchase the horses, making no claim, then she would be estopped from asserting title;' the error being, in his Honor's failing to charge that if Mrs. Cannon turned over these horses to her husband to be shipped in Mr. Cannon's name, and allowed him to hold himself out to the world as the owner of said horses, that a *bona fide* purchaser of said horses from Mr. Cannon, without any notice or knowledge of Mrs. Cannon's claim, would thereby get a good title; it being the party puts their property in possession of another, and allows said party to hold himself out to the world as the owner of said property, a purchaser of said property from the party in possession without notice of anyone else's claim, for value, would get good title."

The same remarks used by this Court in regard to parts of a charge being quoted will be applicable to this exception, and it is, therefore, overruled.

"Sixth. Because his Honor erred, as it is respectfully submitted, in charging the jury as follows, to wit: 'If a man goes and sells your team of mules and your wagon, and is not authorized to do it, you can get a recovery from whoever bought them,' said charge being in error, in that it failed to instruct the jury that if the party selling the team of mules was put in possession of same by the owner, and allowed to hold himself out to the world as the owner of the same, that the party buying the property, without notice that anyone else claimed or owned the said mules, for a

valuable consideration, would thereby get good title to said property."

The Judge was charging the jury as to the effect of man's conduct, which sometimes produces the doctrine of estoppel; the quotation made from his charge was intended to illustrate to the jury the danger of dealing by another with a man's property; in his whole charge he is careful to lay down correctly what flows from an improper interference with the property of the true owner. Having done this, we see no cause for this complaint. This exception is overruled.

"Seventh. Because his Honor erred, as it is respectfully submitted, in refusing to charge, as defendant's attorney orally requested him, as follows: 'That if the jury should believe from the testimony that the plaintiff put her husband, Mr. Cannon, in possession of the property in dispute, allowing him to ship same in his name to Spartanburg, and act in reference to said property before all the world as the owner of the same, that any party who might purchase said property, without notice or knowledge of plaintiff's interest in same, for a valuable consideration, would thereby get a good title to same;' it being submitted that said request was good law and applicable in this case, and it was error to refuse to charge same."

The matter here complained of grows out of an oral request of defendant to charge. The charge, as we have said before, must be considered as a whole, and when so considered, is free from the exception here presented. This exception is overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Mr. Justice Jones *concurs in the result.*

Mr. Justice Woods. I concur. The Circuit Judge charged the law of estoppel correctly. There were no requests for special instructions, and, therefore, the defendant

cannot complain that the Circuit Judge omitted to charge
the propositions of law which he now claims should have
been given to the jury on the subject of estoppel.