·12735

STANDARD MOTORS FINANCE CO., INC., v. SANSBURY

(149 S. E., 597)

Mr. *John P. Green,* for appellant,

314

*Mr. W. H. Smith,* for respondent,

September 23, 1929.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This was an action in claim and delivery, commenced in December, 1926, for the recovery of a Ford roadster described in this action; said action being tried during the February term, 1928, before his Honor, Judge C. C. Featherstone, and a jury, resulting in a verdict for the plaintiff for the possession of the roadster or its value, $200.

The right to the possession of the said Ford roadster is claimed by the plaintiff under a conditional sales agreement, or chattel mortgage, executed by one C. E. McCutchen to the Standard Motor Company of Florence, S. C., and on the same day, or shortly thereafter transferred by the Standard Motor Company of Florence, S. C., to the Standard Motors Finance Company, Inc., State of Louisiana, the conditions of which conditional sales agreement were broken by the said C. E. McCutchen.

Subsequent to the execution and delivery of the above-mentioned sales agreement, or chattel mortgage, and its transfer to the Standard Motors Finance Company, Inc., the said C. E. McCutchen purchased from R. E. Mayo, a Ford dealer of Lake City, S. C., a Ford truck on the deferred payment plan, and, it is contended by the plaintiff from the evidence, left with the said R. E. Mayo, at the time, a Ford roadster, above-mentioned, for the purpose of having the said R. E. Mayo sell same for $375 cash. out of the proceeds of which the said Mayo was to apply $180 as initial payment on the truck purchased from Mayo, the balance to be turned over to the said McCutchen, out of which proceeds he was to pay what was due the Standard

Motors Finance Company, Inc., on the mortgage held by them on the above-mentioned Ford roadster.

The defendant contends, from the testimony, that the Ford roadster was delivered to R. E. Mayo by McCutchen as initial payment on the Ford truck purchased by the said McCutchen from the said R. E. Mayo, which truck was delivered to the said C. E. McCutchen at the time that the possession of the Ford roadster was delivered to R. E. Mayo; that subsequent to the purchase of the truck above mentioned, from R. E. Mayo by C. E. McCutchen, R. E. Mayo executed a chattel mortgage to the defendant, G. L. Sansbury, covering a number of automobiles, among which the Ford roadster, hereinabove mentioned, and after the maturity of the mortgage, notifying the said G. L. Sansbury to take the cars, the plaintiff, from this point, contending from the testimony that Mayo delivered the cars to Sansbury for what he owed on it, as he could not pay the debt, and the defendant contending that he sold the cars to G. L. Sansbury for the consideration of the mortgage debt, after the maturity of the said mortgage, delivering the said automobiles, among which was the Ford roadster in question, in satisfaction and payment of the mortgage debt of R. E. Mayo to the defendant, G. L. Sansbury; that after the said Ford roadster and the other automobiles, described in the chattel mortgage executed by R. E. Mayo to G. L. Sansbury, had been delivered by the said R. E. Mayo to the said G. L. Sansbury in satisfaction or payment of the note and chattel mortgage covering same, the plaintiff herein made demand upon defendant for the possession of the Ford roadster, and based its claim upon an unrecorded sales agreement, or chattel mortgage, executed to it by C. E. McCutchen, as above stated; and that the plaintiff's demand was refused, and the claim and delivery action was instituted by the plaintiff to recover the possession of the property, or its value.

At the close of defendant's case, the plaintiff made a motion for a directed verdict, on the ground that the title

to this Ford roadster was in the Standard Motors Finance Company, Inc., or Mr. McCutchen, and that whatever interest Mr. McCutchen had in it was transferred to the Standard Motors Finance Company, Inc., whereupon the Judge directed the usual verdict in claim and delivery proceedings for the plaintiff, and it is from that verdict that the defendant herein appeals.

The appellant by five exceptions complains of error on the part of his Honor. We think this case will have to be controlled by *Evans and Son v. Pendarvis et al.,* 124 S. C., 489, 117 S. E., 716. This Court said in part in that case:

"Hutto was a special agent of the plaintiffs, intrusted with the specific duty of selling the truck. This authority did not vest him with the authority to treat it as his own and mortgage it. 21 R. C. L., 867. When he mortgaged it, he committed a breach of trust, and could not transfer to the mortgagee any right which he did not possess. The controlling principles of the law, under such circumstances, are so clearly set forth in the opinion of Chancellor Johnstone, then associate Judge of the Court of Appeals in the case of *Carmichael v. Buck,* 12 Rich., 451, that further elaboration is unnecessary. See, also, *Cannon v. Dean,* 80 S. C., 557, 61 S. E., 1012; *Hopkins v. Smathers,* 114 S. C., 488, 104 S. E., 30, 25 L. R. A. (N. S.), 760, note."

In the case of *Carmichael v. Buck,* 12 Rich., 451, cited in the *Evans case,* the Court has this to say: " 'When,' says Story, 'the agency is not held out by the principal by any acts, or declarations, or implications, to be general, in regard to the particular act or business, it must, from necessity, be construed according to its real nature and extent; and the other party must act at his own peril, and is bound to inquire into the nature and extent of the authority conferred. In such a case there is no ground to contend that the principal ought to be bound by the acts of the agent, beyond what he has apparently authorized; because he has not misled the confidence of the other party, who has dealt

with the agent. Each party is equally innocent; and in a just sense, it cannot be said that the principal has enabled the agent to practice any deception upon the other party. The duty of inquiring, then, is incumbent on such party; since the principal has never held the agent out as having any general authority whatsoever, in the premises, and if he trusts, without inquiry, he trusts to the good faith of the agent, and not to that of the principal.' "

21 Ruling Case Law, p. 867, has this to say:

"It is a firmly established doctrine that power conferred upon an agent to sell personal property in his possession does not carry with it an implied power or authority to barter or exchange it for other property, and any attempt on the part of the agent to make such a disposition thereof, in the absence of a ratification by the principal, will be void as to the latter, and title thereto will not pass. An authority to sell does not include power to mortgage the property. Nor does the authority of an agent to carry on the business of a manufacturing company extend to the right to pledge or mortgage its machinery and buildings."

The exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER, and CARTER concur.