COMMERCIAL CREDIT CORPORATION, a MARY-
LAND CORPORATION, APPELLANT, *v.* CLARK SMITH,
DBA PHOENIX AUTO AUCTION, AND TED
CLAREMONT, RESPONDENTS.

No. 4276

July 8, 1960                              353 P.2d 905

*Calvin C. Magleby,* of Las Vegas, for Appellant.

*James L. Wadsworth,* of Las Vegas, for Respondents.

## O P I N I O N

By the Court, BADT, J.:

The question presented is whether the owner of an automobile who sells a car to a used-car-lot dealer, with title certificate attached to a 20-day draft on the purchaser sent to a bank with instructions to deliver the certificate on payment of the draft, permitting the purchaser in the meantime to hold the car on his sales lot for sale, has so clothed the purchaser with indicia of title as to estop the owner from asserting his title as against a credit company that advances money upon an assignment to it by the used-car-lot dealer of a contract of sale from such dealer to a third party purchaser. Neither the credit company, plaintiff below and appellant herein, who asserts the estoppel as against the true owner, in buying the paper, nor the purchaser, in buying the car from the used-car-lot dealer, inquired about a registration certificate or title certificate or assignment or transfer thereof or registration of the car, or any other indicium of title other than possession.

As stated the question seems confusing. It will be simplified by a statement of the facts.

Smith, a wholesale and retail dealer in used cars in Phoenix, Arizona, was the owner of the car in question. He sold to Claremont, a used-car dealer in Las Vegas. He delivered possession of the car but retained the title certificate. He drew a 20-day draft on Claremont, attached the certificate of title to the draft, and sent it to a Las Vegas bank, with instruction for the delivery of the certificate on payment of the draft within 20 banking days —otherwise to return the certificate. Claremont sold the car to one Fields for a down payment of $432 and a contract to pay the balance. Claremont then assigned the

Fields contract to Commercial Credit Corporation, receiving from that company $889.90. In Claremont's assignment to Commercial Credit of the Claremont-Fields contract, Claremont assigned all his right, title, and interest in the car, warranted that he had complied with all laws with respect to the sale, that he was transferring clear title, subject only to the contract, that the lien of his balance due from Fields appeared on the certificate of title, as required by law, as a first lien, and that all of Claremont's obligations in the contract had been fully performed, and that he made such warranties for the purpose of inducing Commercial Credit to purchase the contract. These warranties were all false. Neither Fields, in buying the car from Claremont, nor Commercial Credit Corporation, in buying from Claremont its contract of sale to Fields, made any inquiry as to registration of the vehicle or possession of the certificate of title or any assignment thereto by the original owner to Claremont. Claremont, of course, could not have assigned or delivered or even exhibited a certificate of title or a certificate of ownership, as he had not obtained the same by payment of the draft.

Claremont, after obtaining the $432 from Fields and the $889.90 from Commercial Credit Corporation, absconded. Smith came to Las Vegas, made contact with Fields, exhibited to Fields Smith's ownership certificate, and Fields voluntarily returned the car to Smith. Commercial Credit sued Smith for the return of the car or its value.

The district court rendered judgment for the defendant, Smith, holding that he was not estopped, "it being concluded that something more than mere possession and control is necessary, and possession must be accompanied by indicia of title to protect a person who has dealt with one in possession; that [Commercial Credit] is not in the position of an innocent purchaser and under the facts of this case took the mortgage from [Claremont] at its own risk." He held further, "that the fact that neither Claremont nor Fields was in possession of

any indicia of ownership created a defect in the title which was sufficient to put [Commercial Credit] upon inquiry to ascertain the true facts." We are in accord with this holding.

Appellant relies on Heaston v. Martinez, 3 Utah 2d 259, 282 P.2d 833, 835, which involved a similar transaction —a sale to a dealer with draft attached to certificate of title, and sale by the dealer to a third party, except that assignment by the third party to a credit company was not involved. The Utah court enunciated the general principle that a person cannot transfer a better title to personal property than he has, but applied the exception, "unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." The quotation is from Utah's Uniform Sales Act, U.C.A. 1953, 60–2–7, and the same provision appears in Nevada's Uniform Sales Act, NRS 96.320. It further applied the rule that where one of two innocent parties must suffer through the act of a third person, the loss should fall on the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss, citing Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588; L. B. Motors, Inc. v. Prichard, 303 Ill.App. 318, 25 N.E.2d 129; and Garrett v. Hunter (Miss.), 48 So.2d 871.

In direct opposition to the Heaston case, and in accord with the theory of the two dissenting opinions in that case,[1] is the case of Moberg v. Commercial Credit Corporation, 230 Minn. 469, 42 N.W.2d 54, 55. The syllabus by the court in that case reads as follows: "In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession in faith of his apparent ownership, it is the general rule that something more than

[1]The opinion was written for the majority of the court by Cowley, District Judge. Justice Crockett was disqualified, and Justice Henriod and Chief Justice McDonough dissented. The dissenting judges held that where the true owner retained title and all evidence of ownership save bare possession and refused to make the purchaser a transferee or an owner, the bare transfer of possession without other indicia of ownership, was insufficient to constitute an estoppel.

mere possession and control is necessary. The authorities indicate that possession must be accompanied by indicia of title." To like effect are Deahl v. Thomas (Tex. Civ. App.), 224 S.W.2d 293, and Bustin v. Craven, 57 N.M. 724, 263 P.2d 392.

It should be remembered that this suit was not commenced by the so-called innocent purchaser but by the Commercial Credit Corporation to whom Claremont had assigned the Fields contract. It is quite patent that Commercial Credit, instead of looking for indicia of ownership, looked to the written warranties of Claremont. As it turned out, these guaranties were worthless. We cannot accept the contention of appellant that Smith was the one responsible for Commercial Credit Corporation's loss. In point is the last paragraph of the opinion in Moberg v. Commercial Credit Corporation, supra: "It is our opinion that defendant here was not in the position of an innocent purchaser, but was an experienced loan agency engaged in the business of financing new and used automobiles. If it chose to attempt to take a mortgage from the dealer under the facts and circumstances of this case, it did so at its own risk." The foregoing is the more in point by reason of appellant's insistence that the assignment to Commercial Credit of the Claremont-Fields contract "was a security transaction." If so, then the appellant's contention that plaintiff is estopped is all the less valid. See Tropical State Bank v. Sunshine Motor Co., 137 Fla. 703, 188 So. 595; Pacific Finance Corporation v. Hendley, 119 Cal.App. 697, 7 P.2d 391; National Guarantee & Finance Co. v. Pfaff Motor Car Co., 124 Ohio St. 34, 176 N.E. 678.

So far as the provisions of our statutes bear upon the plea of estoppel, we need only refer to those parts of NRS 482.400 and 482.405 which were in effect at the time of the transactions in question. The provisions of subsections 1 and 2 of NRS 482.400 are in substance the same as subsections (a) and (b), and the provisions of NRS 482.405 are the same as subsection (c) of Stats. 1931, 322, Ch. 202 § 15, 1931 NCL § 4435.14, "An Act * * * to provide for the transfer of interest in and to

motor vehicles. * * *." These require that "every transferee shall, upon transferring his interest or title to another, * * * indorse the certificate of ownership as herein provided and deliver the certificate of ownership to the new legal owner and the certificate of registration to the new owner." Commercial Credit Corporation was charged with knowledge of this requirement. Nor can appellant derive any comfort from Nevada's Uniform Sales Act. NRS 96.320, under subtitle "Transfer of Title. Sale by a Person Not the Owner," reads in part as follows: "1. Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. 2. Nothing in this chapter, however, shall affect: (a) The provisions of any factor's acts, recording acts, or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof." Unless Smith provided appellant, through Claremont and Fields, with a duly executed assignment or transfer of Smith's certificate of title, the estoppel recited in the foregoing would not be effective.

If, on the other hand, as held in some of the authorities, the laws of the state where the transaction took place will govern, we find similar provisions in 9 Arizona Revised Statutes, Annotated, 311, Motor Vehicle Registration, Transfer of Title, § 28–314. The vehicle in question bore Arizona license plates. Under Arizona, as well as Nevada law, Commercial Credit was charged with knowledge of the statutory requirement. See Bustin v. Craven, 57 N.M. 724, 263 P.2d 392.

The holding of the court below to the effect that respondent herein, the legal owner of the car in question, was not estopped from asserting his title, was correct.

Affirmed with costs.

McNAMEE, C. J., and PIKE, J., concur.